I know you all are familiar with our lighting system, and we've read your briefs, so please get to the point as expeditiously as possible. We'll call the first case, number 18-60065, Maldonado v. Barr, Ms. Brodyaga. How was that? Doing well, sir. Sort of okay, okay. Yes. Please. Thank you. May it please the Court, I'm Lisa Brodyaga from San Benito, Texas, appearing on behalf of Mr. Chavez. Mr. Chavez. The case presents two sets of issues, and they are interrelated. The first is the question of whether the BIA ever conducted de novo review of the 2016 decision of the immigration judge, which rejected Mr. Chavez's claim of asylum based on imputed political opinion, namely that expressed by his parents when they went to Mexico to try to reclaim the body of their murdered son, and the documentation, et cetera, and held that basically that simply because they were not harmed during those travels, even though they were lawful permanent residents and could come back to the United States after each trip, that he would not be persecuted. And that was the sole basis of that finding, the lack of harm to his parents. And that is still relevant because that finding formed the basis of the rejection of his motion to reopen, which he filed after he had been released from detention. He was held for two years from when he first fled Mexico after having been treated so badly when he went to find out what happened to his twin brother that the immigration judge said that that was persecution. It just was not based on one of the protected grounds and therefore did not constitute past persecution. But he fled to the U.S., requested asylum, was found to be credible and have a reasonable fear by the asylum officer who interviewed him at the time. But because he was detained for two years, he was not in a position to express his own political opinion. In December of 2015, he was released by a writ of habeas corpus, and he immediately joined an organization called Mexicans in Exile that advocated on behalf of similarly situated people. It was not just his own case anymore. It was a question of the widespread abuse of human rights in Mexico as well as the abuse of human rights defenders in Mexico, which had not been an issue in the first trial. The first trial was limited to, okay, his parents said this, that, and the other, would that be imputed to him? In January of 2016, a month after he was released, the board issued its decision rejecting his second appeal. The first appeal had been granted and it had been remanded to consider imputed political opinion because the IJ had only considered at that time, said, well, he didn't ever express his opinion so he doesn't have anything to fear. So, in the second trial, the judge considered the imputed political opinion and had ruled that no, he would not be persecuted because they were not harmed. So, in January of 2016, the judge, the BIA, rejected that appeal saying that we have conducted de novo review basically of one issue, that of Commander Torres and what happened to him, but did not go into anything else of the case. In fact, to the contrary, they made the very interesting comment to the effect that while the immigration judge conceivably could have weighed the evidence and come to a different conclusion, the clearly erroneous standard of review precludes us from reversing the trier of fact simply because we are convinced that the case could have been decided differently, the case could have been decided differently, or the evidence weighed differently. And that, to me, is clear proof that they did not conduct de novo review of the entire case. That weighing the evidence is what the board was supposed to do in de novo review. Where are you reading from? Was that the February 3rd decision of the BIA? I just want to see where you're reading from. That's the January 16th decision. I got it. But didn't the BIA say that they did conduct a de novo review? They said they only conducted de novo review of the issue of Commander Torres. But didn't they say that they did? You're saying that they didn't. I thought they said they did conduct a de novo review. Well, that was the only thing they reviewed de novo, was what had happened to Commander Torres. After that, they then said this paragraph that I just read to you, that we can't reverse the trier of fact under the standard of clearly erroneous just because we would have reached a different conclusion and we think that the evidence should have been weighed differently. That is clearly erroneous in terms of weighing the evidence because you weigh the evidence when you do a de novo review. And they said we can't do it because we are under the clearly erroneous standard. You're saying that. I think what you're saying is that that is evidence that actually de novo review was not done and that instead this legal conclusion was reviewed under clearly erroneous. Now, I think maybe what Judge Clement is referring to is that later on when the Board was directly asked maybe twice, once on remand by this Court, did you apply de novo review, the Board responded, yes, we did. Isn't that right? They did. And you say that's incorrect. In a later decision, they said they did, but our position is that is inconsistent with what we consider an admission in the decision where de novo review was supposed to have been conducted. The Board was not saying now we are conducting de novo review and we find this. They're essentially saying that in the January 2016 decision we conducted de novo review. Now, with this Court, as I understand the procedure, which is pretty complicated in this case, this came up here once before and we sent it back. I don't know if it was you, but Mr. Chavez is a lawyer and the government agreed to send it back for the Board to make sure that they did it right. And the Board essentially said, yes, we did it right. And is it correct to say that we are reviewing that determination? Is that what we're here reviewing? We are reviewing that determination, but that determination essentially incorporates by reference the decision of January 2016 because they're not saying we are doing it right now. They are saying we did it right back in 2016. What is our standard of review right here, right now? It's de novo, Your Honor. The standard of review for errors of law, these are discretionary determinations, but this Court has often held that an error of law is an abuse of discretion. Okay. Well, so we're up here on the denial of a motion for reconsideration and a motion to reopen. Correct. Well, denial of reconsideration, yes, that's correct. Okay. And do you concede that the standard of review that we are required to follow here is very differential to the BIA, or do you not agree with that? It's differential as to the discretionary aspects, but it's not differential as to questions of law. Okay. Please continue. Thank you. Now, it's our position that that, that I just quoted, is an admission by the BIA in 2016 that they only conducted de novo review of what happened to Commander Torres, but not of the ultimate finding of whether he had a well-founded fear. So we are now at the point where in December of 2015, just before that decision, Mr. Chavez was released pursuant to the habeas, and he incorporated in this organization where he began to very publicly advocate for human rights in Mexico, not just on relating to his deceased brother, which is what the parents had done, but on behalf of all others similarly situated. This was very public. It was highly covered by the press, and all of that was documented in the record. He also documented very thoroughly how human rights advocates are persecuted in Mexico, and they have been persecuted since before this case arose, but the evidence of that persecution really only started to come to light in 2015. All the documentation of persecution of human rights advocates dates from 2015 beyond. You're talking about a motion to reopen at this point, right? Right. So he filed a timely motion to reopen within the 90 days, which means that he was not limited to changed circumstances in Mexico, but his own changed circumstances also were relevant. If it had been untimely, he would have been limited to changed Mexican circumstances, but the change in his personal advocacy, because it was a timely motion, is also relevant. Unfortunately, what the board held in its decision on remand from this court— Well, he said it was cumulative, right? I'm sorry? He said it was cumulative, that his personal advocacy was cumulative because those opinions had been imputed to him before. Does that make any sense to you? Actually, and that's an interesting aspect of the immigration judge's decision. She noted that there were two aspects. One, whether the opinion would be imputed to him, and second, whether he would be persecuted as a result of it. But then she basically assumed it would be imputed. So the question that was before the board in adjudicating the motion to reopen was whether the fact that the parents were not harmed, because that was the sole basis on which his original application was denied, the fact that his parents were not harmed, because when they expressed outrage over the killing of their son, conclusively demonstrated that he would not be harmed, and the fact that he had gone himself out publicly and done all of this advocacy that had been so thoroughly covered, and the fact that the situation in Mexico with respect to human rights had deteriorated during those years was irrelevant. And that's essentially what the board concluded in the denial of the motion to reopen. Let me ask you another procedural question. We are here on denial of a motion to reconsider, a motion to reopen. The underlying BIA decision, has it been appealed? Will it be appealed? Is there still an opportunity to appeal the underlying BIA decision that affirms the IJ? And if that question is procedurally wrong, you can tell me where I'm wrong. Well, the underlying, the 2016 decision, we're here in appeal from the most recent decision, the one on remand from this court. The January 2016 decision was not appealed.  Okay, and all of that has resulted in an appeal in this court. But what about that underlying decision? Is there still an avenue for appealing that, as opposed to a motion to reconsider that decision? The one from 2016? Yes. No. Why not? Well, they would have had 30 days to, well, actually, he did appeal that in his first, well, actually, now I'm confused. He did have two appeals before this court, and the first was the one that was remanded. That was the appeal of the 2016 decision, 2017 decision, of the denial of the motion to reopen and motion to reconsider. It was in 2017, and he appealed that, and that's the one where the government moved, and he agreed that the case be remanded for reconsideration of those issues and anything else that the board would consider relevant. And that's where we're saying that it was relevant what happened to him, his expression of political opinion, after he was released on bond, and that the fact that his parents had not been harmed when they had expressed political opinion relating solely to the issue of their murdered son was not conclusive of whether or not he would be persecuted for what he did when he was released and what he would continue to do. All right, before you run out of time, Judge Duncan, I ask you a specific question. Was the initial 2016 decision, not the motions, was it appealed, and is it too late to appeal it now? It was not appealed, and it is too late. Okay, thank you. And so the question, but it is the appeal from the denial of the motion to reopen brings that into play because the board relied on that decision in making its determination to deny the motion to reopen. They basically incorporated it, so it was essentially incorporated by the BIA itself when in the most recent decision. Well, you have time for rebuttal. Thank you very much. No, thank you very much. Mr. Spurlock. Good morning. May it please the Court, Matthew Spurlock on behalf of the United States. Before this Court, it's just basically two questions. Whether the board abused its discretion in denying the petitioner's motion to reconsider and subsequent motion to reopen. And the standard for that decision is abuse of discretion, which is a very deferential standard. And as we know, the motions to reopen and reconsider are particularly disfavored, especially in immigration cases. It's kind of a strange case, though, from my perspective because the government previously agreed to remand this matter to the BIA to reconsider whether the BIA had made a legal error in its standard of review. Should that affect our standard of review here? I don't believe it does, Your Honor. I believe that the board's decision initially denying the motion to reopen and reconsider, which, as you know, was before this Court, which was remanded. I think the primary reason, I know that it talks about the motion to reconsider and to consider any other legal issue that the board desires to consider, but I think the primary issue is that the board did not specifically discuss the petitioner's change in country conditions argument and instead denied the motion to reopen primarily just on the change in personal circumstances of the petitioner. So I think that, although I can't speak to exactly why the case was remanded, but I can certainly say that there were some issues that the board needed to consider, and that was put back before the board. One of the issues, as I read the remand order, is whether the BIA properly applied de novo review where it should have and clear error review where it should have. Because I've read all the BIA decisions, and it's unclear what standard of review they're actually applying to the IJ's conclusions. Clear error, de novo, unclear to me. If we find in this appeal, going back and reading all those opinions, that the BIA in fact applied clear error review where it should have applied de novo review, are we required to reverse and remand? I believe this court would be required to reverse and remand. There's two... Because that would be, by definition, abusive discretion, wouldn't it? Applying the incorrect legal standard would be an abusive discretion. That is correct, Your Honor. But I would take a step back and say two things, Your Honor. First of all, the board has considered the facts of the motion to reopen and reconsider three times now. And despite what Petitioner is arguing, the board did not admit that it applied the incorrect standard. What the board admitted to was not using the specific words de novo review and coming to the final conclusion of whether or not Petitioner met his burden of showing an objection. The board was being asked to grade its own work by this court. And sometimes when judges grade their own work, they give themselves A pluses, right? That's correct, Your Honor. I mean, you know, I'm going to make mistakes in opinions that I write. But if somebody asked me whether I made a mistake, I'd probably say no, right? I mean, that's what the BIA has done here. We sent it back and said, did you apply the wrong standard? And they said, no, we didn't. That's correct, Your Honor. And I think if you look at the context of all of the decisions the board has used in denying remotion or consideration, it's a very factually intense case. There's many factual findings on the part of the immigration judge. And although the board's opinion, especially the initial one, reads as no clear error, no clear error, no clear error, and then it says we find that there's no objectionably reasonable fear on the part of the Petitioner, it can be read and you can look and say, well, did they apply clear error here or did they apply the de novo standard? And I think if you look at the context of the whole decision, it's pretty clear that they were using the clear error basis on that. And I would also ask the Court to look at ZZO, which is sort of the matter of ZZO, which is the board's precedential decision where they said that in order for the board to consider factual considerations, they need to use the clear error. For all other considerations, it's de novo, including legal considerations. I understand. The ultimate legal conclusion here is whether Mr. Chavez had a well-founded fear of political persecution. That's correct. That's ultimately what's going on. I mean, you get through all the procedural stuff. So with respect to the facts underlying that, is there any material dispute as to the facts of Mr. Chavez's asylum claim or claim of persecution? I mean, is there any material dispute of facts that we have to say, well, we don't know what happened, so we have to defer to the IJ or the BIA? Well, that's a very good question. If you read the petitioner's brief, there's no contesting of the specific findings that were found on clear error. They're just saying that the ultimate conclusion was not de novo. Well, and so you're right. And your brief, too, at page 5, says there's no meaningful dispute regarding the basic facts of Chavez's claim. Now, what are the basic facts of Chavez's claim? Well, I would say the basic facts of Chavez's claim, as were determined by the board, were that he didn't, as an example, I'll go to the example that was mentioned by the board, that Commander Torres, who was investigating the death of his brother, there was allegations that perhaps Commander Torres was involved in, somehow, government corruption. Taking a step back from that, one of the basic claims is that his twin brother was murdered by the police. That's correct, Your Honor. That's a basic claim, and there's no dispute as to that, right? There's no dispute as to that, Your Honor, at all. And I would reiterate, we're not discussing the merits here at all because this is the motion to reopen and reconsideration that's only been appealed.  That would have been after, I believe, the 2016 decision, which they didn't do. Instead, they filed the motion to reopen and reconsider. So that's all we're left with. So the only question presented today is in fact for the BIA to tell us a fourth time that when they say de novo, they meant de novo. Exactly, Your Honor. And although we didn't make a – But I asked you before if we conclude that they didn't actually apply de novo, which is a legal question. That's not anything that we have to defer to the BIA on. If we conclude that the BIA didn't in fact apply de novo review – I mean, I can read opinions just as well as anybody – and I say no, they didn't, that's legal error. That's by definition abusive discretion. I think if the court believes that the board says they did not – says they applied de novo review, but the board doesn't believe that the – I'm sorry, the court doesn't believe the board is actually doing that, then the court would reverse and remand for the board to again say, we've considered this under de novo review. We still deny the – But they'd have to actually do it, right? If we say you didn't apply de novo review, wouldn't they have to actually apply de novo review and then we could review that or not? It would essentially be the exact same decision the court has before it now, which is we reviewed this de novo now three times and we've said that he's not eligible for the relief he's seeking. After considering all the facts that have been presented, we find, basing it on de novo review, he's not met his burden. And there's no reason to think – we did not make a futility argument specifically in the government's brief, but there's no reason to believe that the board would change its – because, first of all, the board has always said we've applied de novo review here, even though we've not said we've applied de novo review. We didn't specifically say that's what we were doing. If you read the context of the decision, that's what we did. I would just point the court's attention to ZZO, which is sort of the last paragraph on page 592 of that decision. It's very interesting because that's the case, the precedential case from the board where the board says these are the standards. And in that decision, the board does the exact same analysis, essentially, that the board did in this case. And in that decision, they say, basing the immigration's findings, applying the clear error standard to those findings, they go through and they make the final conclusion that he's not met his burden for relief. Nowhere in that paragraph do they say we're applying de novo review to that final decision. It's very clear from the context of what the board was doing in that decision, and it's very clear that that's what they did here. And now the board has said that twice. Yes, we've reviewed this de novo. This is what our decision is. There's no reason to think, and there's no evidence in the record that would give any reason for the court to believe that they would give a different reason. There's no reason to believe that the board abused their discretion here. Let me ask you this. So I'm looking at the board's January 7, 2016 decision. That's, I guess, the merits, so to speak. And at age 4, his record's 735, the board says, after it basically says, the I.J. is wrong about the news articles, the news articles that had to do with Torres. And then at the top of that page, first full paragraph, the board says, nonetheless, we do not find clear error in the immigration judge's determination that the information that Commander Torres colluded with cartel members did not impact the respondent's well-founded fear. Now, I don't understand that sentence. Whether or not the applicant or the claimant has a well-founded fear of persecution is a legal question. Is it not? Yes, Your Honor. Okay. Now, I understand there can be factual determinations underlying the legal question, but that sounds like the board is applying a clear error review to the ultimate legal determination of well-founded fear. Is it or is it not? I think it's unclear in that particular paragraph you're referring to, Your Honor. It does appear that it could give that appearance, and I think that's why when it went back to the board, the board has reviewed it and said. Well, and you said there's no reason to think the board would come to a different conclusion on de novo review. The very next sentence says we sympathize with the respondent's fear of returning to Mexico. So if the board sympathizes with the respondent's fear of returning to Mexico and it reviewed it under clear error instead of de novo, why shouldn't we have a very good reason to think that if it actually applied the right standard of review, it might find that he had a well-founded fear of persecution? I think that sentence itself shows that the court was applying a de novo legal review. We sympathize with the facts that have come out that the immigration judge has found, and there's no error in those facts, but we don't believe that there's a legal basis to give relief here because he doesn't meet the legal definition or the legal requirements for the relief. I mean what are the factual disputes regarding the kidnapping of Torres?  I don't believe there was any dispute. Actually, I don't know that it's known that he was kidnapped. I think it was based on some vague articles, and I think the finding from the agency was that the arguments that were made by the petitioner on why he was kidnapped, the purpose of it, was all based on speculation. It wasn't founded in the record why he was kidnapped or what the purpose of it was or if that was actually what they were arguing what it was, which it was some sort of a farce and an attempt to scare the family into no longer investigating the case. And I also believe that he ultimately recovered the petitioner's brother's body and was successful in that. So whether it was clear or not, I don't know. The record really does demonstrate that it's clear. But at the end of the day, those issues were never brought forth in a petition for review for this court to consider that as sort of a merits decision. All we're looking at is whether or not the Board abused its discretion in denying the motion to reconsider here and the motion to reopen. I will just touch on briefly also the motion to reopen. The motion to reopen also, there's also no abuse of discretion in that as well. I believe that the petitioner made two arguments with regard to the motion to reopen. First, the petitioner argues that the Board agreed that in failing to consider evidence of his political activism that after his relief from detention that they have abused their discretion. But the record clearly demonstrates that the Board did not ignore any evidence having to do with his political activism because the Board's findings specifically states that the petitioner's political expression is cumulative of his parents' political opinion, which he claimed was imputed on him, and therefore there was no new evidence out of his change of personal circumstances. So whether that's true or not is really not before the Court because we're not considering the merits. We're just considering the fact that the Board looked at his own changes, which was his personal activities after he was released from detention. So clearly the Board didn't ignore that. Let me see if I understand. He was released on habeas. Is that right? I believe that's correct. He was released. He got rid of habeas corpus. And what counsel opposite just told us is that because he was released on habeas corpus, he was now able to actually express his political opinions regarding the police corruption. That's their claim. That's their claim, and that was at least one basis for the motion to reopen, new material evidence that bears on his well-fended fear of persecution. Yes, Your Honor. And if I understand the reasoning of either the Board or the IJ, the reasoning was, well, that's not material because it's just like the opinions that his parents were expressing. That's correct, Your Honor. And that would be a merits question, and the only issue that's at play here is whether or not the Board considered that, which the Board did, and denied it. It was a basis for denying the motion to reopen.  So we're reviewing that. Absolutely, Your Honor. But clearly here the Board did not, as the petitioner argues in their brief, completely ignored any evidence of his political activism in making their determination to deny the motion to reopen, which they clearly did. So therefore they did not abuse their discretion. But I could review – we could review that determination about the materiality of the new evidence under an abusive discretion standard, right? I don't even believe they're arguing in their opening brief that there is any issue with the materiality of it so there would be no basis to argue that because they've never exhausted that issue before this Court, either in the merits brief or in their most recent opening brief before this Court. They've never asked this Court to issue it. They just said the Board didn't consider it. We are here to review the denial of a motion to reopen that's based in part on that evidence. Yes, Your Honor. That is basically what they argued before the Board. We are trying to reopen our case because of my changed circumstance. I've been released from detention and now I'm a political activist. But the Board didn't distinguish this new evidence as merely cumulative. That's correct. They said that any political opinion that he would have – that he's saying that would cause him to be persecuted, he's already argued that that was imputed to him from his obvious – They didn't consider it. They just rejected it. Absolutely, Your Honor. That's exactly what the Board found here. And that's not what the petitioner is saying. They're just saying the Board never considered it, which isn't true. So the Board didn't abuse their discretion to deny the motion to reopen. Now, in the motion to remand that the government agreed to from this Court, it says – I'm reading page 25 of the record – in that motion the government agreed that, quote, the Board would have the opportunity to respond to petitioner's assertion regarding, quote, evidence of increased persecution against rights defenders and specifically petitioner's allegation about the increasingly pervasive use of torture by government entities in Mexico against human rights defenders such as Mr. Chavez. So that's us. Well, that's the government. And then we agreed to remand it saying you need to consider this. So what was the evidence that was put forth on that issue with respect to the motion to reopen? And, you know, why did the Board say it's not enough? I think because initially what the Board said in denying the motion to reopen the first time around was it focused on what we were just talking about, which was the political activism of the petitioner. They didn't specifically get into the country background conditions that were produced by the petitioner, saying that for people who are similarly situated to me, I'm a political activist, things are deteriorating and becoming more violent for us and we're being targeted more, I suppose, by gang members or criminals or the government. I'm sorry, probably the government. So that's basically what was the basis of the remand for the motion to reopen was the Board did not specifically consider the change in country conditions evidence, which was in the form of background evidence. But in the remand that was remedied and the Board did consider the country conditions evidence. There's quite a bit of it, and indeed the Board, after remand, considered the petitioner's evidence of changed country conditions and concluded there had been no material change warranting reopening. And specifically the Board identified evidence that showed that this wasn't a change in conditions in Mexico where there was more, there was apparently increasing violence against human rights activists, but the Board pointed to evidence produced by the petitioner that showed that this was an ongoing problem prior to the petitioner's removal proceedings, in which they cited two specific articles, which the petitioner's never acknowledged that the Board considered these two articles and has never acknowledged that this is evidence that shows that this was an ongoing problem before petitioner's removal proceedings, before he would have claimed to have become a political activist. Your brief says, Admittedly, some of the background evidence accompanying Chavez's motion to reopen generally indicates that violence has increased against human rights activists. That's correct, Your Honor. And that would be the Nunez v. Sessions case that this Court decided, I believe, in 2018, which the Board wouldn't have had the benefit of. But that clearly addresses this scenario, where the petitioner's arguing change country conditions, but if you can go back, even if there's an incremental increase in violence against someone similarly situated in the country, if it's shown that this is not something that's new and that this was occurring before and this was part of an ongoing increase of violence, even though it's increasing, if you show that six years before his removal proceedings that there was violence against political activists in Mexico, then that's not a basis for a motion to reopen. If the Court doesn't have any questions for me, I'll just conclude. A couple of points, Your Honor. First of all, the fact that the January 16th of 2016 decision was not appealed is not irrelevant because that decision was essentially incorporated by the Board in its most recent decision because they said in that decision, this is what we did there, and we're saying, no, that's not what they did there. So the fact that that was not appealed directly is not relevant. Secondly, it's not the case that Mr. Chavez did not raise the issue in his brief regarding the motion to reopen. On page 16, he says, the BIA recently erred in failing to consider as evidence of renewed political activism subsequent to his release from ICE custody as a basis for reopening. And in rejecting the claim that there was increased violence against human rights advocates, the Board cited a number of cases from this Court that it alleged stood for the proposition that simply because the situation was worse now, even materially worse, incrementally worse, there's a spectrum there. But none of the cases from this Court that the Board cited or any of the cases they cited relate to claims that the situation is worse now and the worsening of the situation is in and of itself a material change. That yes, there were a few human rights violations that go back to 2011, but it was later that it became so pervasive, and that's what he demonstrated with the documentation that was presented. But what was the evidence? I mean, I read about evidence of students being killed. Is that what you're talking about, or is there something else? I think that that shows the impunity with which the human rights are violated in Mexico, that nothing happened as a result of that. They still haven't done anything about it. They've never located the bodies. They think they found some remains in the landfill that may have been them, but he's just showing that the situation is far worse now than it was in 2014 when he had his trial. Were the students murdered in the same part of Mexico that we're talking about? Yes. And what was that? I'm sorry? What part are we talking about? You've got me, Judge. That's okay. Don't worry about it. Sorry. But the fact that there were two aspects to the change of circumstances. One was his personal change, which the board totally rejected, saying it was cumulative, and we consider that not to be the case because it's very different to be in Mexico advocating for human rights for everybody and his parents' isolated trips to Mexico to complain about the murder of their son. And the fact that his advocacy is now far broader, as he even included a new asylum application in the motion to reopen to demonstrate that he was making a much broader claim than what had been previously made, and the board rejected that part out of hand, and they rejected the change of his claim of material change of circumstances as being just cumulative because there had been violations before. Nobody disputes that there had been violations before, but that was not a focus of the original trial. The original trial did not deal with the human rights situation in Mexico as a general matter. It just dealt with the parents' political opinion as expressed in their trips and whether that might be imputed to him, which was never determined. It was just assumed that it would be, and that, therefore, because the parents were not harmed, he would not be harmed. There is a very serious change, material change, when a person who was advocating generally, and he included in the documentation numerous instances of human rights advocates who had been recently persecuted in Mexico and the situation in Mexico, and that is what he would face as opposed to what his parents faced when they went and said, You killed my son, and we're not happy about that. And the fact that his parents were not harmed is not conclusive of whether he would be harmed, and we thank you very much for your attention. Thank you, counsel. The case is submitted.